UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                )
                                      )
   JOSEPH R. VAN DYKE      )    Case No. 04-11465-SSM
                                      )    Chapter 13
             Debtor    )

**MEMORANDUM OPINION AND ORDER**

      An evidentiary hearing was held on March 14, 2007, on the objection of creditors Douglas and Jennifer Minson to confirmation of a modified plan filed by the debtor on December 12, 2006. The modified plan was filed in response to a motion by the chapter 13 trustee to dismiss the case based on default in payments under a previously confirmed plan. The modified plan—which the objecting creditors assert was not filed in good faith—shortens the plan by six months, reduces the debtor's monthly payments from $5,671.00 per month to $1,755.00 per month, and reduces the dividend on unsecured claims from 100 cents on the dollar to approximately 82 cents on the dollar. For the reasons stated, confirmation of the modified plan will be denied.

<u>Background</u>

      Joseph R. Van Dyke ("the debtor") filed a voluntary petition in this court on April 1, 2004 for adjustment of his debts under chapter 13 of the Bankruptcy Code. Among the creditors listed on his schedules were Douglas and Jennifer Minson. The Minsons filed a proof of claim in the amount of $279,000 based upon breach of a contract to construct certain improvements to their house. Upon objection by the debtor, the Minsons' claim was

allowed in the agreed amount of $35,000. The total of the unsecured claims being paid in the case is $277,993.73.

The debtor's plan, which was confirmed on August 20, 2004, requires the debtor to pay the chapter 13 trustee $5,671.00 per month for 60 months, for total plan funding of $340,260. After payment of the trustee's statutory commission and the allowed fees of the debtor's attorney, allowed unsecured claims would be paid pro rata, with the estimated distribution being 100 cents on the dollar. According to the schedule of income and expenses filed with the plan, the debtor's gross monthly income from operation of his business was $10,240.39 and his monthly household expenses were $4,185.14.

The first plan payment was due May 1, 2004. The debtor made regular plan payments (with the exception of two months) through May 2006. Additionally, in October 2005, he and his wife sold their house in Haymarket, Virginia, and the debtor paid $85,874 (his half-share of the sales proceeds) into the plan. In November 2006, the chapter 13 trustee filed a motion to dismiss the case based on the failure to make any plan payments since May 2006. The debtor responded by filing the modified plan that is now before the court.[1]

The modified plan provides for the debtor to make 24 additional payments of $1,755.00 per month. From the payments received, the trustee would pay unsecured creditors 40% of the remaining unpaid portion of their claims. The account filed by the trustee with the motion to dismiss reflects that $200,846.22 has been paid to date on the

---

[1] The trustee withdrew his motion to dismiss after the debtor made the first payment under the proposed modified plan.

$277,993.73 in allowed unsecured claims.  This equates to roughly 72 cents on the dollar.

Forty percent of the remaining unpaid 28 cents on the dollar would amount to a further 11

cents on the dollar, for a total recovery to creditors of 83 cents on the dollar.  The income

and expense schedules attached to the modified plan reflect gross monthly income to the

debtor and his wife of $11,000 per month, net monthly income of $9,025.50, and monthly

living expenses of $6,887.16.  Also attached to the plan are financial statements for two

businesses owned by the debtor and his wife, Piedmont Portable Structures, LLC, and

Jammin' Joe's, a barbeque restaurant.[2]  The statements reflect a drop in profits from 2005 to

2006 for the two business combined of $138,629, or approximately 83%:

|  | 2005 | 2006 | Change |
|---|---|---|---|
| Jammin' Joe's |  |  |  |
| Sales | $285,542 | $235,495 | -$50,047 |
| Net Profit | $11,528 | -$26,449 | -$37,976 |
| Piedmont Portable Structures |  |  |  |
| Sales | $1,340,868 | $811,033 | -$529,835 |
| Net Profit | $154,675 | $54,022 | -$100,653 |
|  |  |  |  |
| Combined Sales | $1,626,409 | $1,046,528 | -$579,882 |
| Combined Profits | $166,202 | $27,573 | -$138,629 |

The debtor and his wife testified that their personal income from the two businesses,

particularly Piedmont Portable Structures, had dropped by approximately $80,000 a year

since the plan was confirmed.  The debtor attributes the drop to the decline in the housing

market, in that most sales of tool sheds and play houses are made when houses are

purchased.  His and his wife's monthly income and expenses, as shown on the original and

---

[2]  The debtor testified that he and his wife also own a third business, called Cracked Pepper Gourmet, which has never made a profit.

amended schedules I and J filed in the case,[3] reflect a 21% reduction in income and a 38% increase in expenses:

|  | Original | Amended | Change |
|---|---|---|---|
| **Monthly Income** | | | |
| Income from business | $ 11,353 | | |
| Salary | | $ 11,000 | |
| less withholding taxes | | $ (1,975) | |
| Net Income | $ 11,353 | $ 9,026 | $ -2,328 |
| | | | |
| **Monthly Expenses** | | | |
| Rent or mortgage | $ 2,427 | $ 2,195 | $ -232 |
| Electricity and heating fuel | $ 166 | $ 400 | $ 150 |
| Water and sewer | $ 14 | | $ -25 |
| Telephone | $ 100 | $ 130 | $ 30 |
| Cell phone | | $ 170 | $ 170 |
| Cable | $ 84 | $ 90 | $ 6 |
| Home maintenance | | $ 250 | $ 200 |
| Food | $ 500 | $ 600 | $ 300 |
| Clothing | $ 80 | $ 100 | $ 20 |
| Laundry and dry cleaning | $ 10 | $ 50 | $ 40 |
| Medical and dental | $ 120 | $ 100 | $ 25 |
| Transportation | | $ 300 | $ 300 |
| Recreation, clubs, newspapers, etc. | $ 500 | $ 100 | $ -100 |
| Charitable contributions | | $ 100 | $ 100 |
| Homeowners or renters insurance | | $ 25 | $ 25 |
| Life insurance | $ 412 | $ 397 | $ -15 |
| Health insurance | | $ 923 | $ 923 |
| Auto insurance | | $ 75 | $ 75 |
| PHP insurance | | $ 21 | $ 21 |
| Automobile payment | | $ 862 | $ 862 |
| Vet bills | $ 50 | | $ -50 |
| Home Owners Assn dues | $ 122 | | $ -122 |
| Housekeeping | $ 180 | | $ -180 |
| Miscellaneous | $ 220 | | $ -220 |
| Total | $ 4,985 | $ 6,887 | $ 1,902 |
| | | | |
| Surplus | $ 6,368 | $ 2,138 | $ -4,230 |

The combined effect, if the amended figures are accepted, is a 66% reduction in surplus disposable income.

---

[3] By "original" is meant the schedules supporting confirmation of the original plan. Those schedules are actually amendments (filed on July 9, 2004) of the schedules I and J filed with the petition. The "amended" figures shown in the table are those shown in the schedules I and J attached to the modified plan.

4

The debtor further testified that for some time he and his wife had planned to move to Florida, where their children and grandchildren were located, and to start up a restaurant there. The sale of the house in the fall of 2005 was part of that plan, with the debtor's wife using her half-share of the proceeds to purchase a condominium in Florida that is titled in both her and her husband's name, although the mortgage is solely in her name.  The debtor and his wife also put the two Virginia businesses up for sale at that time.  They did not receive an offer for what they believed to be a reasonable price until October 2006.  A month prior to that, the Florida condominium had been refinanced, and $168,000 was deposited in the joint checking account maintained by the debtor and his wife.  The debtor testified that the sale of the businesses would have generated sufficient funds to pay the plan in full; however, the buyer was unable to get the financing to complete the purchase.  In the meantime, the debtor, in reliance on the sale contract, had set up a limited liability company, Van Dyke Holdings, in Florida and had signed a lease there for a restaurant, also to be known as Jammin' Joe's.  The debtor testified that he ended up cancelling the lease because the location would not work as a restaurant and that the Florida limited liability company had incurred a loss of $67,000, consisting of funds that had been paid in from the refinance of the Florida condominium.  The debtor further testified that he had recently been diagnosed with cancer for which he expected to undergo surgery within the following two weeks, and that his plan was to "finish out" the chapter 13 case and then move permanently to Florida.  The debtor testified, finally, that the businesses are still up for sale.

Discussion

I.

The purpose of chapter 13 is to enable a financially strapped debtor to repay creditors to the best of his or her ability under court protection and court supervision. Although secured and priority claims must be paid in full, unsecured debts may be paid in a compromise amount so long as the plan is proposed in good faith, the present value of what creditors receive is at least as much as they would receive in a chapter 7 liquidation, and the debtor pays his or her projected disposable income into the plan for at least 36 months.[4] §§ 1325(a)(3), (4), & (b)(1)(B), Bankruptcy Code; *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir 1982) (adopting totality of circumstances test for good faith where debtor proposes zero or minimal payment of unsecured claims).

A confirmed chapter 13 plan binds the debtor and each creditor. § 1327(a), Bankruptcy Code. This does not mean, however, that a chapter 13 plan cannot respond to a debtor's changed financial circumstances. Specifically, at any time after confirmation but before the completion of payments, a plan may be modified at the request of the debtor, the trustee, or the holder of an allowed unsecured claim, to, among other things, "increase or reduce the amount of payments on claims of a particular class provided for by the plan" or "extend or reduce the time for such payments." § 1329(a)(1) and (2), Bankruptcy Code. Thus, a court may require that payments under a compromise plan be increased if the debtor's

---

[4] For cases filed on or after October 17, 2005—the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005)—the required "commitment period" is increased to 60 months for debtors whose annualized income for the six months leading up to the bankruptcy filing exceeds the state-wide median income for a household of the same size. § 1325(b)(4), Bankruptcy Code.

6

ability to pay dramatically improves subsequent to confirmation.  *Arnold v. Weast (In re Arnold)*, 869 F.2d 240 (4th Cir. 1989) (bankruptcy court did not err in requiring increased monthly payment and extending plan period on creditor's motion after substantial unanticipated increase in debtor's income).  It equally follows that payments may be reduced if the debtor's ability to pay substantially deteriorates subsequent to confirmation.  In any event, the modified plan must meet the same confirmation requirements as the original plan.  § 1329(b)(1).  This includes the requirement that the modified plan be proposed in good faith.  § 1325(a)(1), Bankruptcy Code.

## II.

The Minsons urge that the modified plan not be confirmed because it has not been proposed in good faith and because the debtor has not shown a "substantial" and "unanticipated" change in financial condition as required by the Fourth Circuit's opinion in *Arnold* to justify a reduction in plan payments.  The debtor testified to a substantial (approximately $80,000) reduction in personal income from the Piedmont Portable Shelters business (which was the larger grossing of the two businesses) as a result of the downturn in the housing market.  Although the Minsons have challenged some of the expenses shown on the profit and loss statements for the two businesses as being personal rather than business-related, the drop just in revenue (from $1.63 million to $1.06 million, or 34%) is substantial.  The court concludes, therefore, that the debtor has made a threshold showing of a substantial and unanticipated decrease in income sufficient to justify the filing of a modified plan based on changed financial circumstances.

There remains, however, the question of whether the proposed reduction in payout to unsecured creditors goes beyond what is reasonably required by the reduction in the debtor's ability to pay. First, no explanation is provided for why the term of the plan is effectively being reduced from 60 months to 54 months.[5] Second, while the income and expense schedules supporting the modified plan do reflect a 21% decrease in personal income, the 69% reduction in the monthly plan payment is a reflection more of increased expenses than of decreased income. In testimony, the debtor's wife conceded that the $400 per month figure for electricity and heating fuel was no longer correct and that a more accurate figure for the house in which she and the debtor currently reside was $200 to $250 per month. Additionally, no explanation was provided for the $923 per month in health insurance premiums not previously shown, particularly as health insurance (in the amount of $9,719 for 2005 and $16,529 for 2006) is already accounted for as an expense item on the financial statements for Piedmont Portable Structures. Finally, even putting aside the overstated figure for electricity and heating fuel and the questionable figure for health insurance, the monthly plan payment of $1,755 is still $283 less than the monthly surplus of $2,138 shown on the amended schedules I and J. Accordingly, even before consideration of the health insurance premium, the inclusion of the currently-uncommitted surplus, together with an additional $150 for the overstated electricity and heating fuel expense item, and the restoration of the original plan term of 60 months, would result in an additional $14,924

---

[5] The first plan payment was due on May 1, 2004, with the last of the sixty payments being due April 1, 2009. The first payment under the modified plan would have been due January 12, 2006, with the 24th and final payment therefore being due November 12, 2008—six months earlier than the original term.

being paid into the plan.  The modified plan, in short, fails to reflect a serious effort by the debtor to repay creditors to the best of the his ability in light of his current reduced financial circumstances.  For that reason, the court concludes that, although the debtor has shown that *some* reduction in plan payments would be justified, he has not shown that the specific reduction both in plan payments and plan term set forth in the modified plan has been proposed in good faith.

O R D E R

For the foregoing reasons, it is

**ORDERED:**

1. Confirmation of the modified plan filed by the debtor on December 12, 2006, is denied, without prejudice to the previously-confirmed plan.

2. Unless, within 20 days of the entry of this order, the debtor files a further modified plan, the trustee's motion to dismiss for failure to make the payments required by the confirmed plan shall be reinstated on the docket and will be heard on **May 9, 2007, at 1:30 p.m.**  If a modified plan is timely filed, the hearing on the motion to dismiss will be continued (without necessity for appearance by counsel for the debtor) to the scheduled hearing on confirmation of the modified plan and will be treated as withdrawn if no timely objection to confirmation is filed, or, if an objection is filed, the modified plan is nevertheless confirmed.

      3.  The clerk will mail a copy of this order, or give electronic notice of its entry, to the parties listed below.

Date: _____        _____
                                                   Stephen S. Mitchell
Alexandria, Virginia                     United States Bankruptcy Judge

Copies to:

Joseph R. Van Dyke
6203 Toledo Place
Haymarket, VA 20169
Debtor

Ann M. Callaway, Esquire
Ann M. Callaway, P.C.
15 Garrett St.
Warrenton, VA 20186
Counsel for the debtor

Timothy M. Purnell, Esquire
9422 Old Town Court
Manassas, VA 20110
Counsel for Douglas and Jennifer Minson

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee